# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GEORGE KRIS CASSITY (pro se),<br><br>                            Plaintiff,<br><br>            v.<br><br>GCI, INC.; GCI HOLDINGS, INC.; GCI COMMUNICATION CORP.; GCI CABLE, INC.; MARK MODEROW, Senior Counsel, in his official and personal capacity; DAVID HYMAS, Registered Agent in his official and personal capacity,<br><br>                            Defendants. | Case No. 3:17-cv-00004-SLG |

## ORDER RE MOTION TO COMPEL ARBITRATION

      This is a dispute between a telephone and internet service provider, Defendant GCI, Inc.[1] and a customer, Plaintiff George Kris Cassity. Before the Court at Docket 15 is Defendant's Motion to Compel Arbitration and to Stay Complaint. The motion is fully briefed.[2] Oral argument was not requested and was not necessary to the Court's decision.

      The Federal Arbitration Act ("FAA") allows a party "aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the

---

[1] There are multiple defendants, but for clarity, the Court refers to all Defendants collectively as "GCI" or "Defendant."

[2] *See* Docket 22 (Opp.); Docket 24 (Reply); Docket 29-1 (Surreply). At the Court's invitation, GCI filed supplemental briefing on one issue. *See* Docket 33 (Order); Docket 34 (Def.'s Supp. Br.). *See also* fn. 69, *infra*.

manner provided for in such agreement."[3] The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."[4] "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."[5]

Mr. Cassity challenges GCI's motion on both prongs of this inquiry, contending both that the agreement is unenforceable and that it does not govern this dispute.

The Court has jurisdiction to determine this motion pursuant to 28 U.S.C. § 1331, federal question jurisdiction.

### A. Existence of a Valid Agreement to Arbitrate

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[6] Whether the parties agreed to arbitrate is a matter of basic contract interpretation.[7] The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid,

---

[3] 9 U.S.C. § 4.

[4] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

[5] *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

[6] *AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

[7] *See id.* at 649 ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court . . . .").

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 2 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 2 of 20

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[8]

Mr. Cassity and GCI entered an agreement or series of agreements sometime before January 10, 2014 pursuant to which GCI provided internet and other services.[9] There appears to have been no arbitration provision in the contract at that time. However, in June of 2015 Mr. Cassity received a monthly billing notice containing the following advisement:

> The Terms and Conditions for **GCI TV** and **Internet Service** have changed. One change is an agreement to arbitrate. By continuing to use the service(s) for 30 days after this notice, you are consenting to these changes.[10]

Mr. Cassity acknowledges both receipt of this notice and that he continued his internet service (but not his TV service) for more than 30 days, but he denies actually reading the notice or amendment.[11] The changed language provided that Mr. Cassity and GCI would "settle all disputes between [them] by binding arbitration."[12]

Mr. Cassity challenges the validity of the agreement on several grounds. First, he claims that he never assented to this term.[13] Second, Mr. Cassity contends the provision

---

[8] 9 U.S.C. § 2.

[9] *See* Docket 1 at 6–7, ¶ 11; *see also* Docket 23 (Cassity Decl.) at 1–2, ¶¶ 3–5 (describing prior relationship related to non-internet services).

[10] *See* Docket 1 at 25, ¶ 62; Docket 23-17 (May 21, 2015 GCI Bill) at 2.

[11] Docket 23 (Cassity Decl.) at 39, ¶ 81. Mr. Cassity challenges GCI's motion on the grounds that it failed to "produce[] *any* of the notice of amendment documents," Docket 22 at 3, but Mr. Cassity has admitted to receiving the notice—on four separate occasions, Docket 1 at 25–26, ¶ 62—and has helpfully filled what he viewed as an evidentiary gap by providing a copy of his bill.

[12] Docket 16-1 (GCI Internet Terms and Conditions) at 5, ¶ 20 (capitalization altered).

[13] Docket 22 at 3–6.

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 3 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 3 of 20

is voidable on grounds of fraud,[14] duress,[15] and unconscionability.[16] Third, he contends that GCI has waived its right to pursue arbitration.[17] The Court addresses each challenge in turn.[18]

As Mr. Cassity recognizes, the Residential Internet Terms and Conditions (Internet Terms) governed Mr. Cassity's contractual relationship with GCI with regard to the provision of internet services.[19] Those terms explicitly provide for their subsequent modification:

> GCI will give you at least 30 days' advance notice of any changes to this agreement or our service, if such change materially adversely affects your rights or obligations under the agreement. . . . If you do not agree to the amended agreement, you may terminate the Service . . . . If you use the Service for more than 30 days after we notify you of a change, you agree to the amended Agreement.[20]

In *Bingham v. City of Dillingham*, the Alaska Supreme Court noted that if a contract offeror declares that he will "interpret silence as acceptance," then the offeror bears "the burden to prove 'unequivocal acceptance by the [offeree] and an intent to be bound."[21] Mr. Cassity contends that GCI has not met its burden of "unequivocal proof" to establish

---

[14] Docket 22 at 14–16.

[15] Docket 22 at 16–18.

[16] Docket 22 at 18–24.

[17] Docket 22 at 24–30.

[18] Mr. Cassity's other challenges are addressed subsequently in the Court's consideration of whether this dispute is within the scope of the clause.

[19] *See* Docket 1 at 48–54, ¶¶ 121–134 (describing the terms); Docket 1 at 70, ¶ 168 (alleging a breach by GCI of these terms).

[20] Docket 1 at 53, ¶ 133.

[21] 376 P.3d 1245, 1248 (Alaska 2016).

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 4 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 4 of 20

acceptance of the modification in the face of Mr. Cassity's silence.[22] But here, the acceptance was not conditioned on silence; acceptance of the modification was effective upon continued use of GCI's (the offeror's) services for 30 days. Mr. Cassity did use the service for more than 30 days—indeed, he is still using it.[23] By his continued use of the service after receiving notice, Mr. Cassity accepted the terms of the modification and evinced an intent to be bound by it.

*Burgess v. Qwest Corp.* is not to the contrary.[24] There, the contract provided that acceptance of the contract became valid when the user activated the service or "fail[ed] to return the equipment and cancel service within 30 days after ordering services."[25] The Court held that there was no intent to be bound by the terms because, although the customer failed to return the equipment, she had "cancelled her internet service before it was activated . . . and immediately sought to return the modem."[26] Here, by contrast, Mr. Cassity not only failed to return the equipment, but continued to pay for services pursuant to the agreement. Most important, and unlike the parties in either *Burgess* or *Knutson v. Sirius XM Radio, Inc.*[27] (another case cited by Mr. Cassity), Mr. Cassity and GCI had a preexisting contractual relationship that established the terms of consent to modification.

---

[22] Docket 22 at 5 (citing *Bingham*, 376 P.3d at 1248).

[23] Docket 1 at 10, ¶ 16 (explaining that Mr. Cassity has continued using internet services "to the present").

[24] 546 F. Supp. 2d 1117 (D. Or. 2008) (applying Oregon law). Mr. Cassity cites this case (and others) in his surreply. *See* Docket 29-1 at 44.

[25] *Burgess*, 546 F. Supp. 2d at 1120–21.

[26] *Burgess*, 546 F. Supp. 2d at 1121.

[27] 771 F.3d 559, 565 (9th Cir. 2014) (applying California law).

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 5 of 20

And similarly important—and again distinct from either *Burgess* or *Knutson*—Mr. Cassity received several notices of the changes to the agreement.[28] The Court finds that Mr. Cassity accepted the arbitration provision.

Mr. Cassity raises three grounds for voiding the arbitration provision. He first asserts that the contract and the arbitration clause constitute a "constructive fraud" and that the arbitration provision is therefore voidable.[29] Relying on *Graham Oil Co. v. ARCO Products Co.*, Mr. Cassity contends that the contract as a whole is deceptive.[30] But the provision that Mr. Cassity claims renders the arbitration clause deceptive appears in the "GCI Residential TV Terms and Conditions" (TV Terms), not in the Internet Terms that contains the arbitration provision.[31] Even if that provision in the TV Terms was relevant, it clearly states—in all capital letters—that the contractual dispute resolution procedures still apply.[32] Mr. Cassity cannot claim to have been deceived when it turned out that, as the contract affirms, those procedures still apply. Mr. Cassity has identified no fraud in the contract that would preclude enforcement of the arbitration provision.

Mr. Cassity next contends that his assent to the arbitration provision was procured under duress because GCI might have deleted the information he sought if he didn't

---

[28] *See* Docket 16 (Wheatland Decl.) at 2–3, ¶ 3 (describing notification on GCI's website, in email, in paper bills, and in online bills).

[29] Docket 22 at 14–16.

[30] *See* 43 F.3d 1244 (9th Cir. 1994).

[31] *Compare* Docket 22 at 14–15 (citing provision of "GCI Residential TV Terms and Conditions") *with* Docket 15 (Mot. to Compel Arbitration) at 3 (seeking to enforce provision of "GCI Residential Internet Terms and Conditions"); *see also* Docket 16-1 (Internet Terms) at 5 (arbitration clause); Docket 20-1 (TV Terms) at 31 (discussing rights under federal law).

[32] Docket 20-1 at 31. Federal law requires cable providers to inform customers of their rights under the FCA, including enforcement rights. *See* 47 U.S.C. § 551(a)(1)(E).

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 6 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 6 of 20

continue his contract.[33] But, as Mr. Cassity recognizes, duress is an effective defense to a contract only if three elements are met: "(1) one party involuntarily accepted the terms of another, (2) circumstances permitted no other alternative, and (3) the circumstances were the result of coercive acts by the other party."[34] But Mr. Cassity hasn't identified any "coercive acts" by GCI. He suggests that the "withholding of personal information" by GCI—that is, its inability or unwillingness to provide the information he had requested—was "both tortious and potentially criminal," but claims he accepted the contract because of the risk that terminating the contract would "embolden GCI to destroy additional records."[35] But the record contains no evidence that GCI ever threatened to destroy any records or conditioned the release of information on Mr. Cassity's agreement to the arbitration clause.[36] The mere fact that GCI retained a contractual right to delete information upon termination of service does not amount to a "coercive act," especially when federal law prohibits destruction of information when there is a "pending request[] . . . for access to such information."[37] Because there is no "coercive act" sufficient to establish duress, the arbitration clause is not voidable on that basis.

---

[33] Docket 22 at 16–18.

[34] *Hawken Nw., Inc. v. State*, 76 P.3d 371, 377 (Alaska 2003); *see also* Docket 22 at 17 (quoting *Helstrom v. North Slope Borough*, 797 P.2d 1192, 1197–98 (Alaska 1990)).

[35] Docket 22 at 18.

[36] Mr. Cassity disclaims any knowledge of the contract modification. *See* Docket 23 (Cassity Decl.) at 39, ¶ 81 ("I was not aware of the notice of an arbitration agreement amendment in this billing summary until preparing to file this litigation."). It is not clear how he could have been coerced into making an agreement he claims he was unaware of.

[37] 47 U.S.C. § 551(e). The Court does not need to decide if this statute applies to the information at issue here, but emphasizes its scope only because Mr. Cassity contends it applies.

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 7 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 7 of 20

Mr. Cassity's third argument in favor of voiding the arbitration provision is unconscionability. He specifically contends that the costs of arbitration that he might face would preclude him from vindicating statutory rights.[38] The arbitration clause provides that GCI will "reimburse those fees [related to filing, administration, and payment of the arbitrator] for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous."[39] Contract unconscionability is determined in Alaska based on an assessment of various factors such as "weakness in the contracting process," "gross disparity in values exchanged," and "gross inequality in bargaining power."[40] But the Court need not decide whether this provision, pursuant to which GCI would pay arbitration fees for a party such as Mr. Cassity unless the claim exceeds $10,000, is unconscionable. This is because GCI has stipulated to "reimburse Mr. Cassity's filing fee, and [to] pay all administration and arbitrator fees in arbitration, regardless of the amount of Mr. Cassity's claim.[41] Even assuming the provision requiring Mr. Cassity to pay certain arbitration fees if his claim exceeds $10,000 *is* unconscionable, the proper remedy would be to sever that provision and hold that GCI "will be responsible for all of the arbitration costs" rather than "ruling that this case may not be arbitrated."[42] Because GCI has agreed to that precise remedy, unconscionability is not a valid basis for voiding the arbitration clause.

---

[38] Docket 22 at 18.

[39] Docket 16-1 at 5, ¶ 20 (capitalization altered). Mr. Cassity asserts damages in excess of $10,000, *see* Docket 1 (Complaint) at 2, ¶ 2.

[40] *Helstrom*, 797 P.2d at 1200 (quoting Restatement (Second) of Contracts § 208 (1981)).

[41] Docket 24 (Reply) at 11. GCI also argues that the unconscionability analysis in the context of a consumer contract differs from the analysis in the context of employment.

[42] *Gibson v. Nye Frontier Ford, Inc.*, 205 P.3d 1091, 1101 (Alaska 2009).

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 8 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 8 of 20

Finally, Mr. Cassity contends that GCI has waived its right to compel arbitration. Federal law, not state law, governs the defense of waiver.[43] In the Ninth Circuit, waiver of an agreement to arbitrate a dispute requires showing (1) that GCI knew of its right to compel arbitration, (2) that GCI acted inconsistently with that right, and (3) that Mr. Cassity suffered prejudice from GCI's delay in moving to compel arbitration.[44] Mr. Cassity identifies no prejudice, but argues he is excused from showing prejudice if "it is clear that a party has forgone its right to arbitrate."[45] But that rule—although adopted by the Alaska Supreme Court applying federal law—is derived from the Seventh Circuit, and it is inconsistent with the Ninth Circuit's approach that this Court is bound to apply.[46] Under the Ninth Circuit's approach, Mr. Cassity has a "heavy burden" as to each of the three elements.[47] Mr. Cassity has made no showing that he is prejudiced, and accordingly the Court finds that GCI has not waived its right to compel arbitration.[48]

---

[43] *See Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002); *see also Hudson v. Citibank (S.D.) NA*, 387 P.3d 42, 48 (Alaska 2016).

[44] *Sovak*, 280 F.3d at 1270 (citing *Britton v. Co-op Banking Grp.*, 917 F.2d 1404, 1412 (9th Cir. 1990)).

[45] Docket 22 at 24 (quoting *Hudson*, 387 P.3d at 49). Mr. Cassity's asserts three grounds for concluding that GCI has acted inconsistently with its right to arbitrate: (1) GCI failed to attempt informal dispute resolution before moving to compel; (2) GCI's alleged fraud in responding to Mr. Cassity's information requests; (3) GCI's alleged deletion of the information Mr. Cassity sought; and (4) GCI's alleged mischaracterizations and omissions in its filings in this action. None of these is obviously inconsistent with the right to compel arbitration, but as Mr. Cassity has identified no prejudice, the Court does not decide whether one or more of these acts satisfies the second waiver element.

[46] *See Hudson*, 387 P.3d at 49 & n.30 (noting that the Ninth Circuit imposes a "heavy burden" to show each element, including prejudice, *id.* at 49 n.30 (citing *Sovak*, 280 F.3d at 1270), but adopting the Seventh Circuit's approach instead, *id.* at 49 (citing *St. Mary's Med. Ctr. v. Disco Aluminum Prods.*, 969 F.2d 585, 590 (7th Cir. 1992)).

[47] *Sovak*, 280 F.3d at 1270.

[48] *Cf. Sovak*, 280 F.3d at 1270–71 (finding no waiver when plaintiff "has not shown how he was

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 9 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 9 of 20

### B. Scope of that Agreement

Because the arbitration clause is valid and enforceable, the next question is whether it "encompasses the dispute at issue."[49] Mr. Cassity raises two arguments in this regard. First, he claims that his dispute arises not under the Internet Terms (which contains the arbitration clause the Court finds valid and enforceable), but instead under the TV Terms (which contains no arbitration clause). Second, he contends that the arbitration clause does not extend to claims brought under the two provisions of federal law that he asserts here.

Mr. Cassity's Complaint explains that in 2014, at the FBI's suggestion, Mr. Cassity sought "the networking records for his Internet access account from Defendants."[50] Mr. Cassity's claims largely arise from GCI's responses (or lack thereof) to those requests. Mr. Cassity's first cause of action alleges GCI violated its statutory duties through its "repeated failures to respond to Plaintiff's requests for disclosure information and to repair communications services."[51] His second cause of action alleges GCI failed to respond to a March 29, 2015 letter requesting "all customer information" described in two sections of the U.S. Code.[52] His third cause of action alleges GCI's failure to respond to "requests

---

prejudiced" and had "made no attempt on appeal to articulate how he was prejudiced"). The Court is also skeptical that GCI acted inconsistently with its right to arbitrate this dispute, as its first substantive filing in this case was the present motion to compel arbitration. However, the Court need not decide whether GCI's pre-litigation conduct is inconsistent with the right to arbitrate since Mr. Cassity has not shown prejudice.

[49] *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

[50] Docket 1 (Complaint) at 2, ¶ 2.

[51] Docket 1 at 58, ¶ 145 (citing 47 U.S.C. §§ 201, 202, 206, 207, 217, & 222).

[52] Docket 1 at 61, ¶ 150 (citing 47 U.S.C. §§ 521, 522, 551, 552, 556, & 558).

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 10 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 10 of 20

for broadband Internet access information" violated regulatory requirements governing disclosure of "network management practices."[53] The fourth cause of action alleges that GCI's failure to respond violated GCI's duty to disclose "customer proprietary network information."[54] Mr. Cassity's fifth cause of action alleges "grossly negligent and unreasonable conduct" by GCI in breach of federal common law in failing to respond to Mr. Cassity's letters.[55] Mr. Cassity's sixth cause of action alleges breach of contract—specifically, the Internet Terms, which incorporate the GCI Privacy Policy.[56] Mr. Cassity's second sixth (Mr. Cassity identifies two claims as his "sixth" claim) cause of action alleges breach of the duty of good faith and fair dealing in failing to respond to Mr. Cassity's letters.[57] The seventh cause of action alleges negligent infliction of emotional distress for "repeatedly failing to respond in any fashion to Plaintiff's communications."[58] Mr. Cassity's eighth and final cause of action alleges intentional infliction of emotional distress, again for "repeatedly failing to respond in any fashion to Plaintiff's communications."[59]

As is apparent, each of Mr. Cassity's claims relate to his requests to GCI to provide networking information. After Mr. Cassity discovered interference with his digital records

---

[53] Docket 1 at 62–63, ¶¶ 152–54 (citing 47 C.F.R. Ch. I, Subch. A, Pt. 8).

[54] Docket 1 at 66, ¶ 160 (citing 47 U.S.C. §§ 201, 202, 206, 207, 217, & 222).

[55] Docket 1 at 66–67, ¶ 162–63 (citing *Ivy Broad. Co. v. AT&T*, 391 F.2d 486, 489 (2d Cir. 1968)).

[56] Docket 1 at 69–71, ¶ 165–168.

[57] Docket 1 at 72, ¶ 172.

[58] Docket 1 at 72, ¶ 175.

[59] Docket 1 at 73, ¶ 178.

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 11 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 11 of 20

and various online accounts, he sought the help of the FBI.[60] The FBI encouraged Mr. Cassity to "obtain copies of whatever networking records were available to him from his Internet services provider, GCI, to facilitate the inquiry."[61] In response to this suggestion, Mr. Cassity reached out to GCI by phone, hand-delivered letter, certified mail, and email.[62] In these communications, Mr. Cassity sought information about his IP addresses and other networking information related to his internet services.[63]

In his surreply, Mr. Cassity points out that his March 29, 2015 letter "requested information for [certain] dates by reference to the terms of the Cable Act."[64] But mere reference to certain statutory provisions does not transform the nature of his requests in that letter; rather, Mr. Cassity's refers to the FCA in the letter to support his request for "all GCI networking information," "personal IP addresses," and "Internet use logs" to support the investigation into "fraudulent, abusive and unlawful acts in the invasion of my computer and my internet services."[65] Mr. Cassity makes no mention of his "cable services" in that letter. His requests for information did not relate to his cable television services.

---

[60] Docket 1 at 19, ¶ 39–41.

[61] Docket 1 at 20, ¶ 42.

[62] Docket 1 at 20, ¶ 43; Docket 1 at 20, ¶ 44; Docket 1 at 22, ¶ 49; Docket 1 at 23, ¶ 53; Docket 1 at 27, ¶ 67; Docket 1 at 29, ¶ 71; Docket 1 at 40, ¶ 100.

[63] *See* Docket 23 (Cassity Decl.) at 27, ¶¶ 46–47 (describing phone calls); Docket 16-2 (Jan. 7, 2015 letter); Docket 16-3 (Jan. 20, 2015 letter); Docket 16-4 (March 29, 2015 letter); Docket 16-5 (June 23, 2015 email); Docket 23-15 (July 31, 2015 letter).

[64] Docket 29-1 (Surreply) at 7 (citing Docket 16-4 (March 29, 2015 letter)).

[65] Docket 16-4 at 2–3.

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 12 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 12 of 20

In his surreply, Mr. Cassity also suggests that his Complaint alleges breach of contract arising from GCI's failure to repair his telephone services.[66] And indeed it does.[67] Because Mr. Cassity raised this argument for the first time in his surreply, the Court invited supplemental briefing on whether these claims are subject to arbitration.[68] In its supplemental briefing, GCI acknowledged that claims related to Mr. Cassity's landline telephone services are not subject to mandatory arbitration and has withdrawn its motion to compel arbitration as to these claims.[69]

Apart from the telephone repair claims, this dispute relates to the internet services GCI provided to Mr. Cassity pursuant to the Internet Terms. The arbitration clause in those terms is therefore operative in this dispute. Mr. Cassity suggests that GCI has not produced "contract language governing the arbitrability of disclosure request disputes."[70] But the arbitration clause provides for arbitration of "all disputes" between the parties. This broad scope clearly encompasses disputes about disclosure requests related to Mr. Cassity's internet services.

---

[66] Docket 29-1 at 7–8.

[67] *See, e.g.*, Docket 1 at 32–35, ¶¶ 80–88; Docket 1 at 71, ¶ 169.

[68] Docket 33.

[69] Docket 34 at 4. GCI also indicated it will move to dismiss these claims on other grounds. Docket 34 at 5. Mr. Cassity was permitted to file a supplemental brief, but the Court did not receive such a brief before the set deadline. As GCI withdrew its motion with regard to the subject of that supplemental briefing, Mr. Cassity is not prejudiced by not filing a supplemental brief.

[70] Docket 22 at 6.

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 13 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 13 of 20

Yet, Mr. Cassity argues, the contract does not in fact waive his statutory right to litigate his claim in federal court.[71] Mr. Cassity's argument proceeds in two steps: First, he contends that federal law give him a statutory right to sue in district court.[72] Second, he claims that either a contract *cannot* waive his right to sue in district court[73] or else this particular contract *does not* contain the "clear and unmistakable waiver" he contends is required to do so.[74] But, as explained below, even assuming that Mr. Cassity is correct with regard to his first claim—that the statute gives him a right to pursue his claims in this case in district court—Mr. Cassity is mistaken in his view that the contract cannot waive that right and that it does not contain a "clear and unmistakable" waiver of that right.

All claims are potentially subject to arbitration, including claims invoking federal statutory rights.[75] Indeed, the FAA "establishes a 'federal policy favoring arbitration'" and standing alone "mandates enforcement of agreements to arbitrate statutory claims."[76] But "[t]here are some statutes where Congress has evinced an intent to preclude arbitration of claims."[77] The burden to establish that congressional intent lies with the party opposing

---

[71] *See* Docket 22 at 12–13; Docket 22 at 30–35.

[72] Mr. Cassity relies on 47 U.S.C. § 551(f)(1), which provides that "any person aggrieved by any act of a cable operator in violation of this section may bring a civil action in a United States district court," and 47 U.S.C. § 207, which provides that "any person claiming to be damages by any common carrier . . . may bring suit for recovery of damages . . . in any district court of the United States of competent jurisdiction."

[73] Docket 22 at 30–35.

[74] Docket 22 at 12 (citing *Bernard v. Alaska Airlines, Inc.*, 367 P.3d 1156 (Alaska 2016).

[75] *See Mitsubishi Motor Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 627 (1985).

[76] *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

[77] *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 725 (9th Cir. 2007).

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 14 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 14 of 20

arbitration, and such intent must be "'deducible from [the statute's] text or legislative history,' or from an inherent conflict between arbitration and the statute's underlying purposes."[78]

Mr. Cassity attempts to meet his burden by arguing that 47 U.S.C. § 551(f), which provides for a civil action as a remedy for violations of cable subscriber privacy protections,[79] was intended to establish "a uniform national policy for the cable industry enforced by a private attorney general mechanism."[80] Allowing arbitration, Mr. Cassity contends, would be at odds with this intent. Mr. Cassity similarly asserts that 47 U.S.C. § 207, which provides for enforcement of 47 U.S.C. § 222 (among other provisions) in either a district court or before the FCC, would be undermined by permitting arbitration of such claims.[81]

Assuming that these statutes apply to Mr. Cassity's claims,[82] the asserted conflicts are insufficient to overcome the presumption in favor of arbitrability. Permitting a cable subscriber to agree to arbitrate his claims does not require him to "forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than

---

[78] *Shearson*, 482 U.S. at 227 (quoting *Mitsubishi*, 473 U.S. at 628) (alteration in original); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Lozano*, 504 F.3d at 726.

[79] The provision provides a remedy in district court for a "violation of this section." Section 551, titled "Protection of subscriber privacy," requires a provider of "any cable service or other service to a subscriber" to annually inform subscribers of what and how information is collected, disclosed, and maintained, and imposes substantive limits on collection and disclosure. *See* 47 U.S.C. § 551(a–e).

[80] Docket 22 at 33.

[81] Docket 22 at 34–35.

[82] Because the Court does not need to decide whether the referenced statutes apply in this context in order to resolve this motion, it does not.

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 15 of 20

a judicial, forum."[83] The Ninth Circuit has squarely rejected the argument that 47 U.S.C. § 207 precludes arbitration of claims brought under the FCA because the "important public policy considerations" protected by the act are outweighed by the "strong public policy favoring arbitration."[84] That reasoning applies with at least equal force to 47 U.S.C. § 551(f). The Court does "not perceive any inherent inconsistency between those policies [advanced by 47 U.S.C. §§ 207 & 551] . . . and enforcing agreements to arbitrate" such claims.[85] This is so even when arbitration "focuses on specific disputes between the parties involved" because arbitration is not distinct from judicial adjudication in this way and because individualized dispute resolution, even in arbitration, can still work to advance the policies underlying substantive rights.[86] Arbitration similarly does not undermine the FCC's potential role in enforcing 47 U.S.C. § 222 because the FCC's role in enforcing that statute "is not dependent on the filing of a charge" as the FCC "may receive information concerning alleged violations of the [statute] 'from any source.'"[87] In short, Mr. Cassity has not met his burden to show a congressional intent to preclude arbitration of his claims. The statutory right thus is susceptible to waiver in favor of arbitration.

---

[83] *Shearson*, 482 U.S. at 229–30 (quoting *Mitsubishi*, 473 U.S. at 628).

[84] *Lozano*, 504 F.3d at 726.

[85] *Gilmer*, 500 U.S. at 27.

[86] *Gilmer*, 500 U.S. at 28 (approving arbitration of ADEA claims).

[87] *Gilmer*, 500 U.S. at 28 (quoting 29 C.F.R. § 16.26.4) (explaining that arbitration of ADEA claims did not undermine EEOC's role in enforcing ADEA).

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 16 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 16 of 20

But Mr. Cassity contends that even if the right may be waived, a "clear and unmistakable" waiver of that right is both required and missing. In *Bernard v. Alaska Airlines, Inc.*, the case on which Mr. Cassity relies, an employee sued his former employee for wrongful termination.[88] The trial court dismissed the case because the plaintiff-employee had failed to exhaust his contractual remedies, which included as the final step an appeal "to the System Board of Adjustment, a three-member arbitration panel."[89] In Alaska, under the so-called *Hammond* rule, an employee has waived the right to sue in state court "by agreeing to arbitrate such claims instead" if the contract contains either (1) "an arbitration clause including a provision whereby employees specifically agree to submit all federal causes of action arising out of their employment to arbitration," or (2) "an explicit incorporation of the statutory anti-discrimination requirements in addition to a broad and general arbitration clause."[90] The Alaska Supreme Court reversed the trial court because, in its view, the provision at issue neither extended to "all federal causes of action" nor "contain[ed] an explicit incorporation of the statutory anti-discrimination requirements." The Alaska Supreme Court held that the arbitration clause was reasonably read to provide the right to pursue arbitration only to the union and the employer, and not to the employee.[91] Without deciding the actual scope of the clause—that is, without concluding definitively that the employee did not have right to pursue arbitration—the Alaska Supreme Court concluded that "[t]he contract's

---

[88] 367 P.3d at 1157.

[89] 367 P.3d at 1158.

[90] *Bernard*, 367 P.3d at 1163 (quoting *Hammond v. State*, 107 P.3d 871, 877 (Alaska 2005).

[91] *Bernard*, 367 P.3d at 1163–64.

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 17 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 17 of 20

apparent foreclosure of a grievant's right to arbitrate if the union declines to do so on the grievant's behalf is inconsistent with the first prong of the *Hammond* test, which requires the employee's specific agreement to submit all claims to arbitration."[92] The arbitration clause was also inconsistent with the second prong of the test because it was not "a broad and general arbitration clause."[93]

But even if the *Hammond* rule applies to commercial contracts such as the one at issue here, this contract satisfies its requirements. Unlike the provision at issue in *Bernard*, which permitted the union to pursue arbitration but did not clearly permit the employee to do so, the provision here clearly applies to Mr. Cassity—there is no third party involved.[94] The provision applies to "ALL DISPUTES." The arbitration clause therefore satisfies the first prong of the *Hammond* test, as it reflects an intent to submit all claims—including federal statutory claims—to arbitration.[95]

Because the provision satisfies the first *Hammond* requirement, the Court need not consider whether it meets the second—the provision is a "clear and unmistakable" waiver if it satisfies *either* prong.[96] Thus, Mr. Cassity's argument that the provision does

---

[92] *Bernard*, 367 P.3d at 1164.

[93] *Bernard*, 367 P.3d at 1164.

[94] *See* Docket 16-1 (GCI Internet Terms and Conditions) at 5, ¶ 20 ("YOU AND GCI AGREE TO SETTLE ALL DISPUTES BETWEEN US BY BINDING ARBITRATION . . . . YOU AGREE TO NOTIFY US . . . BEFORE INITIATING BINDING ARBITRATION.").

[95] Other courts have reached the same conclusion. *See, e.g.*, *Cova v. Charter Commc'ns*, 2017 WL 666097 at *6–7 (E.D. Mo. Feb. 17, 2017) (rejecting plaintiffs' contention that "because 47 U.S.C. § 551 'provides for suit in a United States district court . . . [plaintiffs] are entitled to this day in court" and instead compelling arbitration).

[96] *See Bernard*, 367 P.3d at 1163.

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 18 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 18 of 20

not meet the second prong because GCI retains a unilateral right to modify the terms,[97] even if correct, does not permit him to avoid his agreement to arbitrate. The Alaska Supreme Court's discussion of that issue in *Bernard* was limited to the second prong of the *Hammond* test.[98]

### C. Summary

The arbitration clause in the Internet Terms applies to this dispute, as it centers on Mr. Cassity's requests for information about his internet services. That arbitration clause is sufficiently broad, on its face, to apply to Mr. Cassity's claims, with the exception of the telephone services repair claims. If federal law provides Mr. Cassity a statutory right to sue in district court, that right is waivable by contract in favor of arbitration, and this contract waives it. The contract, including the arbitration clause, is valid and enforceable.

Therefore, IT IS ORDERED that GCI's Motion to Compel Arbitration at Docket 15 is GRANTED.[99] With the exception of the telephone services repair claims, adjudication of this case is STAYED pending completion of the arbitration proceedings. The parties shall file a status report no later than October 31, 2017 concerning the status of the arbitration proceedings.

GCI indicated in its supplemental reply that it intended to file a motion to dismiss as to the remaining telephone repair services claims. Accordingly, IT IS FURTHER

---

[97] *See* Docket 22 at 13.

[98] *See Bernard*, 367 P.3d at 1164–65.

[99] GCI's initial motion sought arbitration of all of Mr. Cassity's claims, but it has withdrawn that motion with respect to Mr. Cassity's claims related to his landline telephone services. *See* Docket 34 at 4.

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 19 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 19 of 20

ORDERED that GCI shall file any motion to dismiss such claims within 30 days of the date of this order.

DATED this 27th day of July, 2017 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:17-cv-00004-SLG, *Cassity v. GCI, Inc. et al.*
Order re Motion to Compel Arbitration
Page 20 of 20
Case 3:17-cv-00004-SLG   Document 36   Filed 07/27/17   Page 20 of 20